[No. C042822. Third Dist. Oct. 21, 2003.]

ABRAHAM ROBERTSON, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, MOUNTAIN
PEOPLE'S WAREHOUSE et al., Respondents.

## COUNSEL

Tom Royse Johnson and Anderson & Johnson for Petitioner.

Cuneo, Black, Ward & Missler and Jill M. Zerkle for Respondents Mountain People's Warehouse and Traveler's Insurance.

No appearance for Respondent Workers' Compensation Appeals Board.

## OPINION

**DAVIS, Acting P. J.**—In this workers' compensation action, we conclude that the employer, Mountain People's Warehouse (hereafter Company), failed to satisfy its obligation to offer the benefit of vocational rehabilitation (VR) to its injured employee, Abraham Robertson (Robertson). (Lab. Code, §§ 139.5, 4635 et seq.)[1] A few weeks after Robertson sustained his on-the-job injury, Company, acting pursuant to a discretionary Company policy, discharged him for missing too many days of work (these absences were not injury related). Subsequently, Robertson was found to be a qualified injured worker, making him eligible to receive VR. (§§ 139.5, 4635, subd. (a), 4637, 4638, subd. (a).)

Generally, for an employer to satisfy its VR obligation, it must either offer the injured worker a modified/alternative position that is compatible

---

[1] Further undesignated section references are to the Labor Code.

with his or her work restrictions, or offer vocational rehabilitation services (VR services) such as counseling, training, schooling, or job placement assistance. (§§ 4638, subd. (a), 4635, subds. (d), (e), 4636, 4644, subd. (a)(5), (6), (7); *Del Taco v. Workers' Comp. Appeals Bd.* (2000) 79 Cal.App.4th 1437, 1441 [94 Cal.Rptr.2d 825] (*Del Taco*).) To meet its VR obligation here, Company presented Robertson with an alternative position that it would have offered him had he not been terminated for breaching the attendance policy. (§§ 4636, subd. (d), 4638, subd. (a), 4644, subd. (a)(6).)

We conclude that Company failed to satisfy its VR obligation to Robertson. Company cannot claim that it actually made an offer of an alternative position, or that it made such an offer in good faith.

We annul the decision and order of the Workers' Compensation Appeals Board (WCAB) that found the offer of the alternative position satisfied Company's VR obligation. We remand the matter to the WCAB.

BACKGROUND

Robertson worked for Company for a few months in 1998–1999, and was then rehired in December 2000 as an order selector.

On August 6, 2001, Robertson suffered an on-the-job injury to his lower back. He returned to work shortly thereafter. He was informally given what was termed "modified duty" based upon lifting restrictions outlined by his treating physician. (This informal modified work was not made pursuant to the requirements of an offer of a modified position. See § 4644, subd. (a)(5).)

On September 10, 2001, Robertson was terminated, pursuant to a discretionary Company policy, for having nine unexcused absences from work in less than 12 months (an unexcused absence, essentially, is one not confirmed through documentation; the policy stated that nine unexcused absences "may result in immediate termination"). Robertson's absences were for a family emergency, a car accident, and personal and family illnesses. These absences, save one, occurred prior to Robertson's industrial injury. The one exception involved an absence so Robertson could care for his seriously ill wife.

In December 2001, Robertson's treating physician found him to be "permanent and stationary" and a "qualified injured worker." ■ Permanent and stationary status means an employee has improved medically as far as he will, or his condition has been stationary for a reasonable period of time. (Cal. Code Regs., tit. 8, § 10152.) ■ A qualified injured worker is one whose expected permanent disability precludes him from engaging in his usual occupation, and who can reasonably be expected to return to suitable

gainful employment through VR services. (§ 4635.) VR services are available only to a qualified injured worker. (§§ 139.5, 4637, 4638; 1 Cal. Workers' Comp. Practice (Cont.Ed.Bar 4th ed. 2000) § 6.22, p. 320 (Cal. Workers' Comp.)

Shortly after the treating physician's determination, Company, through its insurance carrier, Travelers, sent a letter to Robertson's attorney regarding an alternative position of "invoicer." That letter stated in part: "Invoicer is the position [Company] would have offered Abraham Robertson had he not been terminated for breaching the attendance policy." (Underscoring in original.)

When an employer offers an injured employee a bona fide alternative or modified position (or another position acceptable to the employee) that lasts at least 12 months, that employer has satisfied its VR obligation. (§§ 4638, subd. (a), 4644, subds. (a)(5), (a)(6), (a)(7); 1 Cal. Workers' Comp., *supra,* §§ 6.22, 6.49–6.52, pp. 320–321, 341–343.) A modified position is the injured worker's usual job with the same employer, only modified to accommodate injury-related work restrictions. (Cal. Workers' Comp., *supra,* § 6.50, p. 342.) An alternative position is a job with the same employer that is not modified work but is compatible with the work restrictions. (*Id.,* § 6.51, p. 342.)

In May 2002, the rehabilitation unit in the Division of Workers' Compensation determined that Company had not offered Robertson, a qualified injured worker, modified/alternative work, and that he was entitled to VR services. The rehabilitation unit initially handles VR disputes in the workers' compensation system for unrepresented employees. (§ 4645, subd. (a)(1).)

Company appealed the rehabilitation unit's determination to the WCAB. (§ 4645, subd. (d).) In the appeal, the workers' compensation judge (WCJ), relying on *Anzelde v. Workers' Comp. Appeals Bd.* (1996) 61 Cal.Comp.Cases 1458 (*Anzelde*), concluded that Company had made a good faith offer of modified/alternative work. Through this offer, Company had satisfied its VR obligation.

Robertson unsuccessfully petitioned the WCAB for reconsideration. The WCAB agreed with the WCJ.

Robertson then petitioned this court for a writ of review, which we denied summarily in January 2003. Robertson had more success, though, before the state Supreme Court. That court granted Robertson's petition to review our summary denial, and directed us to vacate our denial and consider the matter. We shall do so.

DISCUSSION

The question is: Did Company's offer of the invoicer job constitute an offer of alternative work that satisfied Company's VR obligation? Our answer: no.

■ Section 3207 of the Workers' Compensation Act specifically lists VR benefits as among the " compensation" to be provided by employers to their injured workers. (§ 3207; *LeBoeuf v. Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 234, 242 [193 Cal.Rptr. 547, 666 P.2d 989] (*LeBoeuf*).) Echoing sentiments expressed in *LeBoeuf* about the importance of rehabilitating injured workers, one court has remarked that "[i]t is also well recognized that entitlement to VR is one of the most important benefits under the Labor Code. [Citations.] Section 3202 [of the Workers' Compensation Act] provides that courts should liberally construe, with the purpose of extending benefits, matters which govern all aspects of workers' compensation. [Citation.] This policy is particularly compelling policy where the right to VR is at stake." (*Martinez v. Workers' Comp. Appeals Bd.* (2000) 84 Cal.App.4th 1079, 1084 [101 Cal.Rptr.2d 406].) ■ We are required to view the Workers' Compensation Act " ' "from the standpoint of the injured worker" ' " with the objective of securing for him or her the maximum benefits which can lawfully be given. (*Avalon Bay Foods v. Workers' Comp. Appeals Bd.* (1998) 18 Cal.4th 1165, 1174 [77 Cal.Rptr.2d 552, 959 P.2d 1228]; see *Del Taco, supra,* 79 Cal.App.4th at p. 1440; § 3202.) The objective of VR is to help workers who are injured on the job remain self-sufficient and productive members of society. (*LeBoeuf, supra,* 34 Cal.3d at p. 242; *Martinez, supra,* 84 Cal.App.4th at p. 1084; see §§ 139.5, 4635, subds. (a), (f), 4638.)

As noted, for an employer generally to satisfy its VR obligation, it must either offer the injured worker a modified/alternative position that is compatible with his or her work restrictions, or offer VR services such as counseling, training, schooling, or job placement assistance. (*Del Taco, supra,* 79 Cal.App.4th at p. 1441; §§ 4636–4638, 4635, subd. (d), (e), 4644, subd. (a)(5), (6).)

At the outset, we note that Company did not *actually* offer Robertson the alternative position of invoicer. The language of the letter that constituted the "offer" stated that "Invoicer is the position [Company] would have offered Abraham Robertson had he not been terminated for breaching the attendance policy." (Underscoring in original.)

Company likens its "offer" of the invoicer position to the offer of the modified position made in *Anzelde, supra,* 61 Cal.Comp.Cases 1458. The offer in *Anzelde* was deemed to have been made in good faith, and satisfied the employer's VR obligation. Here, the WCJ and the WCAB relied on *Anzelde* to rule in favor of Company. (*Anzelde* is a writ-denied summary of a WCAB decision. The WCAB has approved the citation of writ-denied summaries published in the California Compensation Cases. Accordingly, courts have occasionally cited them in published opinions.) (*Wings West Airlines v. Workers' Comp. Appeals Bd.* (1986) 187 Cal.App.3d 1047, 1053, fn. 4 [232 Cal.Rptr. 343].)

Before we discuss *Anzelde*, a bit of statutory background is in order. Section 4644 specifies the circumstances that will terminate an employer's VR obligation. Those circumstances do not include the situation we face here—that of an injured worker who thereafter is fired for cause, pursuant to a discretionary, internal company policy, prior to being deemed a qualified injured worker eligible for VR benefits, and who is then presented with an alternative position that would have been offered him had he not been fired.

The VR-terminating circumstances specified in section 4644 can be grouped in three categories: first, if the employee declines, completes, unreasonably fails to complete, or untimely fails to request VR services; second, if the employer offers qualifying modified or alternative work, or a similar position agreeable to the employee, or if the employee voluntarily quits such a position before the prescribed 12-month period; and, third, if the employee and employer have agreed to self-directed VR. (§ 4644, subd. (a).) Furthermore, and this is an important point as to *Anzelde*, if a qualified injured worker returns to modified or alternative work with the same employer, or to work with a different employer as a result of VR services job placement assistance, and "that employment terminates . . . for cause, within 12 months of the date the employee was employed at the modified or alternative work," or the employee voluntarily quits before the prescribed 12-month period, the employer's VR obligation ends. (§ 4644, subd. (f), formerly subd. (d).) With this background in mind, we turn to *Anzelde*.

*Anzelde* involved an injured police officer who was found to be a qualified injured worker. The officer's employer offered him a modified job in late January 1994, and he accepted it the next month. The modified job was slated to begin April 11, 1994. When the April date arrived, the officer reported to work, but was told he had been placed on administrative leave with pay pending the results of internal investigations into his alleged illegal activities. The officer was eventually terminated in May 1995. (*Anzelde, supra,* 61 Cal.Comp.Cases at pp. 1458–1459.)

In *Anzelde*, the WCAB found the employer had satisfied its VR obligation to the officer by making the offer of the modified job, and found the officer was no longer entitled to VR services. (*Anzelde, supra,* 61 Cal.Comp.Cases at p. 1459.) The *Anzelde* summary quoted the following three paragraphs from the WCAB's decision:

"The only reason applicant [i.e., the officer] was unable to work at the modified job created pursuant to the rehabilitation plan was circumstances which were solely within his control, to wit, his participation in unlawful activities which were unrelated to his industrial injury.

"Under the rules pertaining to offers of modified work . . . , an employer's liability for rehabilitation services ends if the modified employment is

terminated 'for cause.' (Labor Code § 4644(d) . . . [now subd. (f), which is identical for our purposes].) . . .

"The decision to place [the officer] on administrative leave with pay, pending the results of the investigation and his subsequent termination for cause, were unrelated to his injury." (*Anzelde, supra,* 61 Cal.Comp.Cases at p. 1459.)

From its view of *Anzelde,* Company argues that the only reason Robertson was unable to work at the alternative job of invoicer was due to a circumstance solely within his control—his termination for too many unexcused absences, which was unrelated to his industrial injury. Accordingly, Company's offer of the invoicer position was made in good faith and satisfied Company's VR obligation.

The problem for Company is that its view of *Anzelde* does not encompass the whole picture of the good faith offer made there. The employer in *Anzelde* actually *offered* a modified job to the officer. The officer actually *accepted* it after his VR counselor and his treating physician approved it. The officer *reported to work* on the modified job and was placed on administrative leave with pay pending investigation. In *Anzelde,* then, the offer of the modified job, its VR-approved acceptance, the employee's return to the modified position, his placement on administrative leave with pay, and his eventual termination for cause, constituted the functional equivalent of a *return to modified work* and a termination of *that employment* for cause. This aligns with the language of section 4644, subdivision (f) (formerly subd. (d)), cited and discussed in *Anzelde*) that an employer's VR obligation ends "if a qualified injured worker returns to modified or alternative work with the same employer . . . and that employment terminates . . . for cause." This whole picture is what made the *Anzelde* offer a good faith one that satisfied the employer's VR obligation.

By contrast, here there was no actual offer of alternative work, no actual acceptance of that offer, and no return to an alternative position that was terminated for cause. Instead, Company presented to Robertson an alternative position it "would have offered" him had he not been previously discharged. (Underscoring in original.) This "offer" cannot be considered an offer within the realms of good faith and VR satisfaction set forth in *Anzelde* and section 4644, subdivision (f) (formerly subd. (d)).

Nor can Company find solace in *Del Taco, supra,* 79 Cal.App.4th 1437. It appears that the employer there, Del Taco, may have formally offered modified work to an injured employee. (*Id.* at p. 1441.) After the employee accepted the offer and began the modified work, Del Taco terminated the

employment because it discovered that the employee was not legally permitted to work in the United States. (*Ibid.*) Viewed in this way, the employee returned to modified work and was terminated for cause from *that employment.* Thus, Del Taco's VR obligation ended under section 4644, subdivision (f).

But the court in *Del Taco* did not even have to go this far to overturn the WCAB's decision that Del Taco was obligated to provide VR services to the employee in Mexico. The *Del Taco* court concluded that the employee, at the outset, did not satisfy the "medical eligibility" test for being a qualified injured worker entitled to VR benefits. (§ 4635, subd. (a)(1).) This was because the employee did not actually have a permanent disability that precluded him from engaging in his usual occupation; it was only his immigration status that precluded him from working at Del Taco. (*Del Taco, supra,* 79 Cal.App.4th at pp. 1441–1442; § 4635, subd. (a)(1).) As we have seen, Robertson was found to be a qualified injured worker entitled to VR benefits.

The *Del Taco* court also found merit in Del Taco's argument that it would suffer what amounted to a potential $16,000 penalty (the monetary cap for providing VR services) only because the injured employee could not perform modified work in the United States. (*Del Taco, supra,* 79 Cal.App.4th at p. 1442; see § 139.5, subd. (c).) According to the *Del Taco* decision, simple fairness dictated that Del Taco should not be penalized for obeying the law by not retaining the employee, and the employee should not be rewarded for disobeying the law by remaining in the United States with an invalid social security number. (*Del Taco, supra,* 79 Cal.App.4th at pp. 1440, 1442.)

Company argues by analogy to *Del Taco* that it should not be penalized for following a legitimate company policy by not retaining Robertson, and Robertson should not be rewarded for violating the policy by his excessive absenteeism. However, Company, in contrast to Del Taco, was not *legally foreclosed* from offering Robertson the alternative position. Only a discretionary, internal policy of Company was at stake (nine unexcused absences "*may* result in immediate termination"). (Italics added.) The employee in *Del Taco* was terminated for cause from his modified position for violating a criminal law; his retention would also have subjected Del Taco and its officers to criminal fines and imprisonment. (*Del Taco, supra,* 79 Cal.App.4th at p. 1441.) In contrast, Robertson was terminated for cause from his regular employment for missing too many days of work because of illness, a car accident and a family emergency; his retention was permissible under the discretionary attendance policy.

In the end, Robertson suffered an industrial injury for which he was found to be a qualified injured worker. This made him eligible to receive VR

benefits. (§§ 4635, 4636–4638, 4644.) ■ Those benefits are among the most important in the workers' compensation scheme. (*Martinez, supra,* 84 Cal.App.4th at p. 1084.) They are triggered by the on-the-job injury. (*LeBoeuf, supra,* 34 Cal.3d at p. 242.) Their settlement or commutation is severely restricted. (§ 4646.) If Company cannot offer Robertson a modified or alternative position, it must offer him VR services. (§§ 4638, subd. (a), 4644, subd. (a)(5), (6), (7).) These facts are not changed because Robertson, pursuant to a discretionary company policy, was fired from his regular (not a modified or alternative) position for having too many unexcused absences. Company does not go so far as to argue that Robertson's firing disqualified him from receiving *any* workers' compensation benefits for his industrial injury, and rightly so. If Robertson is not disqualified from receiving payment for medical treatment and for disability, why, then, is he disqualified from receiving VR benefits? There is no good reason. These are all potentially applicable components here of a workers' compensation award. (See 2 Witkin, Summary of Cal. Law (9th ed. 1987) Workers' Compensation, § 250, p. 820; cf. *Del Taco, supra,* 79 Cal.App.4th at pp. 1440–1442.)

Because we have resolved this matter favorably to Robertson on the basis of workers' compensation law, it is unnecessary to consider his constitutional equal protection claim. (See *College Hospital, Inc. v. Superior Court* (1994) 8 Cal.4th 704, 721 [34 Cal.Rptr.2d 898, 882 P.2d 894].)

### Disposition

The WCAB's decision and order filed November 1, 2002, is annulled. The matter is remanded to the WCAB for further proceedings consistent with this opinion. Robertson is awarded his costs in pursuing this writ proceeding.

Nicholson, J., and Raye, J., concurred.

The petition of respondent Traveler's Insurance for review by the Supreme Court was denied December 23, 2003.